UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THE BUILDING INDUSTRY ELECTRICAL
CONTRACTORS ASSOCIATION ("BIECA")
AND BUILDING INDUSTRY FUND, INC.,

        Plaintiffs,

   -against-

PATRIOT ELECTRIC CORP., AND MICHAEL
TEK, INDIVIDUALLY,

        Defendants.

**MEMORANDUM & ORDER**
**22-CV-07653 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs Building Industry Electrical Contractors Association ("BIECA") and Building Industry Fund, Inc. ("BIF") bring this action against Defendants Patriot Electric Corp. ("Patriot") and Michael Tek. (*See generally* Compl. (Dkt. 1).) Plaintiffs allege that Patriot and Michael Tek violated the Labor Management Relations Act ("LMRA") and state contract law by failing to make payments to Plaintiff BIF pursuant to their obligations under a collective bargaining agreement (the "CBA") between Plaintiff BIECA (on behalf of employers including Defendant Patriot) and non-party United Electrical Workers of America IUJAT, Local 363 (the "Union"). (Compl. ¶¶ 12, 62-95.) Now before the court is Defendants' fully briefed motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Not. of Mot. (Dkt. 9); Mot. (Dkt. 12); Opp. (Dkt. 14); Reply (Dkt. 15).)

For the reasons set forth below, the motion to dismiss is GRANTED in part and DENIED in part. The court GRANTS Defendants' motion to dismiss Plaintiff BIECA's claims in their entirety and DENIES Defendant's motion to dismiss Plaintiff BIF's LMRA claim. The court further DISMISSES Plaintiff BIF's state contract law claims on consent.

1

## I.   BACKGROUND[1]

### A.   Factual History

On December 1, 2019, BIECA, a multi-employer association which serves as a bargaining unit for electrical contractors in the New York City area, entered into a Collective Bargaining Agreement with the United Electrical Workers of America IUJAT, Local 363. (Compl. ¶¶ 1, 8-13, 27.) Defendant Patriot, an electrical contracting company, was a BIECA member and Defendant Michael Tek is Patriot's owner and Chief Executive Officer. (Compl. ¶¶ 5, 9.) The relevant CBA, in effect from December 1, 2019 through November 30, 2022, (*id.* ¶ 27), set forth the terms of the relationship between the employers on whose behalf BIECA negotiated the contract and the Union. (Compl. ¶ 33; *see also* Ex. A to the Compl. (Dkt. 1-1) ("CBA Exhibit").)[2]

These terms included the formation and administration of several funds, which included an ERISA Annuity Plan, an ERISA Retirement Plan, and an ERISA healthcare plan. (Compl. ¶ 15.) According to Plaintiffs, the CBA provided that BIECA would "sponsor" and "operat[e]" these plans "as a service to the member employees." (*Id.* ¶¶ 15, 17.) However, BIECA's role in administering these plans is not stated in the CBA itself. (*See generally* CBA Exhibit, Art. 25.).

---

[1] The following facts are, unless otherwise noted, taken from the Complaint and, for the purposes of this motion to dismiss, assumed to be true. *See Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 349 (2d Cir. 2022).

[2] In addition to the Complaint, the court considers the CBA as well as the Memorandum of Understanding attached to the Complaint. (*See* Ex. A to the Compl. (Dkt. 1-1) ("CBA Exhibit"); Ex. B to the Compl. (Dkt. 1-2) ("Memorandum of Understanding").) *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.") (citations omitted).

In addition to the ERISA plans, the CBA outlines the employers' obligations to pay into the Building Industry Fund ("BIF"). (*See generally* CBA Exhibit, Art. 26.) Services and functions reviewed in the CBA are practically handled by Plaintiff BIF to which "BIECA delegates all operational matters." (Compl. ¶¶ 19-24, 35-40.) BIECA itself has "no employees, no income or financial dealings" of its own. (*Id.* ¶ 18).

The BIF was created by the employers and is managed by trustees appointed by the employers. (CBA Exhibit, Art. 26(D).) The stated purpose of the CBA is:

> [T]o promote the business and welfare of the electrical industry, to make known the jurisdiction of said Industry; to promote the programs of education, training, administration of collective bargaining agreements, research and the services performed by the EMPLOYERS; to stabilize and improve EMPLOYER-UNION relations; to provide, promote, support and improve the training and employment opportunities of electrical workers employed by the EMPLOYERS; to disseminate to general contractors, architects, engineers and owners information about the kind, quality and merits of the work performed by the EMPLOYER; to avoid grievances and jurisdictional disputes; and generally to promote and improve in all lawful ways the interests and welfare of the Industry.

CBA Exhibit, Art. 26(C).

According to the Complaint, the BIF also "administer[s] the sponsorship of the various ERISA programs required of the CBA" on BIECA's behalf, and "provides various services to covered employees," including some that "would usually be provided by a union." (*Id.* ¶¶ 21-22.) It also handles day-to-day "CBA contract negotiation, member employer support, member employee benefit assistance, oversight and administration of professional services including legal, accounting, and audit." (*Id.* ¶ 35.) BIECA

oversees the operations of BIF to ensure the requirements of the CBA are being met. (*Id.* ¶ 24.)

BIF is funded under Article 26 of the CBA which requires BIECA member employers to make payments into the fund "based on work hours of their covered employees with certain limitations on maximum payments." (*Id.* ¶ 36; *see also* CBA Exhibit, Art. 26.)[3] Pursuant to the Memorandum of Understanding between the Union and BIECA dated October 15, 2019, the maximum amount due from any BIECA employer to BIF is capped at $75,000 per annum ($6,250 monthly). (*Id.* ¶ 39.) Plaintiff alleges that this provision concerning the funding of BIF also effectively funds BIECA, allowing both Plaintiffs to provide employee members services and ensure that the requirements of the CBA are being met. (*Id.* ¶¶ 23-24, 36.)

Plaintiff alleges that as a member of BIECA, Defendant Patriot was bound by the CBA, (*Id.* ¶ 32), and that for eight years, Patriot made payments to BIF according to the terms of a predecessor to the CBA at issue. (*Id.* ¶¶ 25-27.) However, beginning in January 2020, Patriot ceased making payments after BIECA and the Union entered into a new agreement in December 2019 even though the relevant terms under the CBA remained the same and BIECA and BIF continued to provide services to Patriot and its employees. (*Id.* ¶¶ 25-27, 48-50.) As of December 1, 2022, Patriot owed BIECA and BIF in the principal amount of $218,750.00, plus interest. (*Id.* ¶¶ 52, 54-55.)

---

[3] Article 26(B) of the CBA requires each employer (including defendant Patriot) to contribute 4.5% of its gross wages for prevailing rate work (and a set burden for non-prevailing work) to the Building Industry Fund ("BIF"), with a minimum of $200.00 per month. (Compl. ¶ 38.)

### B. Additional Facts for Consideration with Regard to the 12(b)(1) Motion[4]

Alongside its Motion, Defendants submitted an affidavit from Defendant Michael Tek, Chief Executive Officer, President and owner of Defendant Patriot Electric Corp. (*See* Aff. of Michael Tek ("Tek Aff.") (Dkt. 10); Compl. ¶ 5.) In the affidavit, Mr. Tek states that he is "not aware of BIECA and/or BIF performing any functions or services whatsoever for the benefit of the employees of Patriot," (Tek Aff. ¶ 8), and that while Patriot "was a member of BIECA, the sole service BIECA performed was to engage in negotiations for a collective bargaining agreement on behalf of its member employers," (*id.* ¶ 5). Mr. Tek also disputes that BIECA had a role in the administration of the ERISA funds, arguing that the Dickinson Group, LLC—not BIECA or BIF—helped to administer the ERISA funds as the funds' third-party administrator. (*Id.* ¶¶ 9-12.) Lastly, Mr. Tek states that he "do[es] not know that [he] personally negotiated" the CBA or recall any negotiations in which an increase in contributions to BIF was discussed, (*id.* ¶¶ 14-15), and that he did not personally sign the CBA or Memorandum of Understanding. (*Id.* ¶ 17.)

In response, Plaintiffs provide their own affidavit by Pat Bellantoni, Director of the BIF and President of BIECA. (*See* Aff. of Pat Bellantoni ("Bellantoni Aff.") (Dkt. 13).) Mr. Bellantoni states that BIECA delegates all operational matters to BIF to perform BIECA's necessary functions and that BIECA oversees BIF's operations to ensure the requirements of the CBA are being met. (*Id.* ¶¶ 15, 19.) Mr. Bellantoni also states that BIECA sponsors and administers the employee ERISA plans set forth in the CBA and provides "substantial programs and assistance to covered employees including, training, medical programs, assistance with

---

[4] Additional facts are considered outside the pleading for the purpose of Defendant's motion to dismiss for lack of subject matter jurisdiction. *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017).

benefit administration," and others. (Bellantoni Aff. ¶¶ 7-13.) Lastly, Bellantoni states that Michael Tek "was directly and personally involved in the negotiation of the CBA and was personally present and an active participant in the 2019 negotiations of the CBA as a member of BIECA and on behalf of BIECA." (*Id.* ¶ 25.)

## C. Procedural History

The operative Complaint is the third filed before this court relating to this matter. Plaintiff Building Industry Fund, Inc. first filed an action against Defendants on February 17, 2022. *See Building Industry Fund, Inc. v. Patriot Electric Corp et al*, No. 22-CV-888 (NGG) ("*BIF Litigation*"). Defendants then filed a motion to dismiss that was fully briefed on June 17, 2022. *See BIF Litigation*, Notice of Mot. (Dkt. 14). While that motion was pending, Plaintiff Building Industry Electrical Contractors Association filed a nearly identical complaint alleging the same claims against the same Defendants. *Compare Building Industry Electrical Contractors Association v. Patriot Electric Corp et al*, No. 22-CV-4209 (NGG) ("*BIECA Litigation*"), Dkt. 1; *with BIF Litigation*, Dkt. 1.

At a pre-motion conference on Defendants' motion in *BIECA Litigation* on November 22, 2022, this court granted Plaintiffs' motion to withdraw both complaints and directed the Plaintiffs to file a new complaint that included both BIF and BIECA as plaintiffs in the action. *BIECA Litigation*, Min. Entry dated November 22, 2022. Plaintiffs did so, filing the operative Complaint on December 16, 2022 in the instant case. (*See generally* Compl.)

Defendants then filed the fully briefed motion to dismiss the operative Complaint on March 22, 2023. (*See* Not. of Mot.; Mot.; Opp.; Reply.) In their motion, Defendants argue that the court should dismiss Plaintiffs' claims under Rule 12(b)(1) for lack of subject matter jurisdiction or, alternatively, under Rule 12(b)(6)

for failure to state a claim. (*See generally* Not. of Mot.; Mot.)[5] The court now considers Defendants' motion.

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a district court must dismiss a case when it "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to dismiss under Rule 12(b)(1), the court must accept all material factual allegations in the complaint as true, *see Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir. 1998), but should not draw "argumentative inferences favorable to the party asserting jurisdiction." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir. 1992) (*citing Norton v. Larney,* 266 U.S. 511, 515 (1925)). The non-moving party bears the burden of showing, by a preponderance of the evidence, that the court has subject matter jurisdiction over its claims. *See id.* The court may refer to evidence outside the pleadings when defendants challenge the factual underpinnings of plaintiffs' claim for subject matter jurisdiction. *See Makarova,* 201 F.3d at 113 (*citing Kamen v. American Tel. & Tel. Co.,* 791 F. 2d 1006, 1011 (2d Cir. 1986)).

Defendants also seek dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). When the court reviews a motion to dismiss pursuant to Rule 12(b)(6), the court accepts as true all allegations of facts made by the plaintiff and draws all reasonable inferences in the plaintiff's favor. *See ATSI*

---

[5] Defendants' Notice of Motion stated that Defendants were moving pursuant to Rules 12(b)(1) and 12(b)(6), (*see* Not. of Mot). In their memorandum of law supporting their motion, however, they only refer to Rule 12(b)(6), (*see generally* Mot. at 5). But certain of the grounds for dismissal alleged are jurisdictional in nature and the court will therefore construe those portions of the pleading as a motion to dismiss the Complaint under Federal Rule of Procedure 12(b)(1).

*Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).[6] While a court generally looks only to the allegations in the complaint in deciding a Rule 12(b)(6) motion, *Perez v. Westchester Foreign Autos, Inc.*, No. 11-CV-6091, 2013 WL 749497, at *5 (S.D.N.Y. Feb. 28, 2013) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)), the court may also consider materials attached to the complaint or incorporated by reference. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004). A court will dismiss a complaint for failure to state a claim if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. DISCUSSION

### A. Jurisdiction Over Plaintiffs' LMRA Claims

#### 1. Overview of Section 301(a) of the LMRA

Under § 301(a) of the Labor Management Relations Act:

> Suits for violation of **contracts between an employer and a labor organization representing employees** in an industry affecting commerce as defined in this chapter, or **between any such labor organizations**, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (emphasis added).

The word "between" in Section 301(a) qualifies the word "contracts" and not "suits." *See Smith v. Evening News Ass'n*, 371 U.S. 195, 200 (1962). The statute thus effectively grants federal

---

[6] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

courts jurisdiction to hear suits for violations of contracts between employers and unions even when an "employer" or a "labor organization"[7] are not the parties to the suit. *See Shea v. McCarthy*, 953 F.2d 29, 31 (2d Cir. 1992); *Painting & Decorating Contractors Ass'n of Sacramento, Inc. v. Painters & Decorators Joint Comm. of E. Bay Ctys., Inc.*, 707 F.2d 1067, 1070-72 (9th Cir. 1983) ("Section 301 jurisdiction is not dependent upon the parties to the suit but rather the nature or subject matter of the action. Jurisdiction exists as long as the suit is for violation of a contract between a union and employer even if neither party is a union or an employer."). For the purposes of Section 301 of the LMRA, "employers" include multi-employer associations such as BIECA. *See Metro Ass'n of Plumbing-Heating-Cooling Contractors v. Minnesota Mech. Contractors Ass'n*, No. 01-CV-1368 (JRT), 2002 WL 459073, at *4 n.3 (D. Minn. Mar. 18, 2002) (citing 29 U.S.C. § 152(2); *Associated Shoe Indus. of Se. Mass., Inc.*, 81 NLRB 224, 227 (1949)).

This case involves a dispute that arises from an alleged violation of the CBA, a contract between BIECA and the Union. (Compl. ¶ 12; CBA Exhibit.) Because the dispute arises from the CBA and the CBA was entered into by employers and a union, this court has jurisdiction under the language of the statute.

Defendants dispute jurisdiction, however, arguing that Plaintiffs may not bring federal claims under the LMRA because they do not have standing. (Mot. at 6-11.) Defendants first argue that there is not standing because "for this Court to have jurisdiction under 29 U.S.C. § 185(a), the dispute must be either between an

---

[7] A "labor organization" under the act is defined as "any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 152(5).

employer and a labor organization or between two labor organizations." (Mot. at 6.) As discussed, however, this misreads the statute. The focus under Section 130 of the LMRA, 29 U.S.C. § 185(a), is on whether the *contract* is between an employer and a labor organization or between two labor organizations, not on whether the *suit* is between such entities. *See Smith*, 371 U.S. at 200. This argument therefore fails.

   2.   Statutory or Prudential Standing Under the LMRA

Defendants next argue that Plaintiffs do not have standing because they do not fall within the "zone of interests" of the LMRA and therefore do not have "statutory standing." (Mot. at 6, 8-11.) To support this, Defendants cite *Ferrera v. Quadrozzi Equip. Leasing Corp.,* a case from within this district that reviewed and rejected claims by an "industry advancement fund" because it was not a "core part[y]" to the LMRA. (*See* Mot. at 9; Reply at 3 (citing *Ferrera v. Quadrozzi Equip. Leasing Corp.*, No. 11-CV-5183, 2013 WL 3226755, at *6 (E.D.N.Y. June 25, 2013)).) A brief review of the statute and recent case law considering the "statutory standing" and "zone of interests" analysis relied upon by *Ferrera* shows why this argument also fails.

The statute under which Plaintiffs claim jurisdiction, 29 U.S.C. § 185(a), was adopted as part of the Labor Management Relations Act of 1947 "to promote industrial peace through the collective bargaining process by assuring the enforceability by federal courts of collective bargaining agreements between employers and labor unions." *District 2 Marine Engineers Beneficial Ass'n-Associated Maritime Officers, AFL-CIO v. Grand Bassa Tankers, Inc.,* 663 F.2d 392 (2d Cir. 1981) (collecting cases). Placing jurisdiction in federal courts to enforce such agreements served several purposes, including: to ensure that contracts negotiated between unions and employers would be honored, *id.*; to ensure uniform federal law fashioned from a national labor policy, *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 457-58 (1957); and out

of a concern that many state courts would not provide adequate relief because of local rules or decisions inhibiting suits by or against labor organizations. *Seymour v. Schneckloth*, 368 U.S. 351, 358 (1962). Ultimately, federal jurisdiction would ensure "accountability, consistency, conformity and stability" in the law that governed collective bargaining agreements. *See Shea*, 953 F.2d at 31.

Since the enactment of this statute, the overwhelming majority of suits brought under 29 U.S.C. § 185(a) are between employers and unions seeking enforcement of collective bargaining agreements related to the employer's employees. *District 2*, 663 F.2d at 397. However, the statute extends jurisdiction beyond these traditional suits. *See id.* For instance, union members may bring suits individually against their employer under the LMRA for violation of collective bargaining agreements despite not being individual signatories to the agreement. *Smith*, 371 U.S. at 200-01. Individuals may even bring suits against their own union for violation of a "union constitution" that governs a parent union and its local chapters because the governing document may be considered a "contract between labor organizations." *See Shea*, 953 F.2d at 30-31 (citing *Wooddell v. Int'l Bhd. of Elec. Workers, Loc. 71*, 502 U.S. 93, 101 (1991)).

But despite the breadth of the statute, *see Smith,* 371 U.S. at 199 (rejecting a more restrictive interpretation of the statute), some courts have found that Section 130 of the LMRA does not extend federal jurisdiction to certain suits even when they arise from collective bargaining agreements. In *Ferrara v. Quadrozzi Equip. Leasing Corp.*, for instance, the court considered standing for an "industry advancement fund" that was established "pursuant to a series of collective bargaining agreements" to "benefit the general welfare of the ready-mix concrete industry." 2013 WL

11

3226755, at *1, 5.[8] The court found that such a fund was not a "core part[y]" to the agreement, distinguishing the fund from employers, unions and "employee benefit funds" established principally to benefit employees and their families. *Id.* at *6. According to the court, industry advancement funds (unlike employers, unions and employee benefit funds) "do not fall within the zone of interests protected by § 301 of the LMRA." *Id.* Therefore the plaintiff did not have "statutory standing" and the court dismissed the complaint. *Id.* at *3-6 (citing *Bennett v. Spear*, 520 U.S. 154, 162 (1997)).

Statutory or "prudential" standing, as distinct from constitutional standing, refers to "judicially self-imposed limits on the exercise of federal jurisdiction" that are "founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Bennett*, 520 U.S. at 162. Central to a consideration of statutory standing was whether the plaintiff's "grievance" fell within the "zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *Id.*

This concept of standing shifted a year after *Ferrara* was decided, however, with the Supreme Court's decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). In *Lexmark*, the Court held that when considering whether the plaintiff comes within the "zone of interests" of a given statute, the focus should not be on a judicial determination of "prudential principles" as it was in *Ferrara*, *see* 2013 WL 3226755, at *5, but instead on "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark*, 572 U.S. at

---

[8] Both Plaintiffs and Defendants cite to *Ferrara* in their briefs, arguing that it supports their reading of the statute. (*See* Mot. at 9, 11; Opp. at 10; Reply at 3.)

127. This analysis is to be undertaken using "traditional principles of statutory interpretation" to determine whether the plaintiff has a cause of action under the statute. *Id.* at 128.

Turning back to Section 301 of the LMRA. This statute creates a cause of action for parties asserting "violations of contracts between an employer and a labor organization." *Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Showtime on the Piers, LLC,* No. 19-CV-7755 (VEC), 2020 WL 2749572, at *6 (S.D.N.Y. May 26, 2020) (citing 29 U.S.C. § 185(a)); *see also Wooddell,* 502 U.S. at 101. By its language, this includes third-party beneficiaries of a contract between a union and an employer if the collective bargaining agreement creates rights stated in and affected by the alleged violation of said agreement. *Cunningham v. Loc. 30, Int'l Union of Operating Engineers,* 234 F. Supp. 2d 383, 394 (S.D.N.Y. 2002) (citing *Wooddell,* 502 U.S. at 101); *see also* 20 Williston on Contracts § 55:59 (4th ed. 2023) ("A nonsignatory may acquire standing to bring an action to enforce a collective bargaining agreement if that individual, whether or not an employee, is a third party beneficiary of the contract.").

This broader reading of the statute serves at least one of the statute's key purposes: avoiding the possibility that individual contract terms might be interpreted differently in federal and state courts, which could lead to inconsistency and disrupt the negotiation and administration of collective bargaining agreements. *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103 (1962). Conferring federal jurisdiction on disputes other than those between employers and unions—when those disputes arise from a contract between these entities and require interpretation of the terms of this contract—allows consistency, uniformity, and stability in labor law in the same way that it would when the parties to the contract bring a claim. *Cf. Wooddell,* 502 U.S. at

102 ("If suit by an employee to enforce an interunion contract is not authorized by § 301 and the employee is remitted to state court and to state law, it is plain that the same contract terms might be given different meanings based solely on the identity of the party.")[9]

Regardless of the policy considerations, whether the statute falls within the "zone of interests" such that the court has jurisdiction over the suit is based on the text. *See Lexmark*, 572 U.S. at 127. And the text of Section 130(a) of the LMRA, 29 U.S.C. § 185(a), grants a cause of action to parties for violations of collective bargaining agreements, even when they are not parties to the agreement. *Painting & Decorating Contractors Ass'n of Sacramento*, 707 F.2d at 1070-72 ("All that is required for jurisdiction to be proper under § 301(a) is that the suit be based on an alleged breach of contract between an employer and a labor organization and that the resolution of the lawsuit be focused upon and governed by the terms of the contract.").[10] Nothing in the text indicates a different result for an "industry advancement fund" that is a third-party beneficiary to the contract.

---

[9] For similar reasons, Section 301 may even confer jurisdiction even to parties who do not have rights created by a collective bargaining agreement but where the claims are "substantially dependent on analysis of a collective-bargaining agreement." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209, 220 (1985); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987).

[10] Defendants cite *Metro Ass'n of Plumbing-Heating-Cooling Contractors*, 2002 WL 459073, to argue that the LMRA does not apply to lawsuits between employers. (*See* Mot. at 8.) However, the agreement at issue in that case—which was between two employer associations—related to an agreement to transfer funds between employer associations that was not stated in a collective bargaining agreement with a union, but was instead "a private agreement that only tangentially relate[d] to a collective bargaining agreement." *Id.* at *1, 4 (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)). Thus, this case is distinguishable from cases such as this one which arise directly from a collective bargaining agreement.

### 3.   Application to BIF's LMRA Claims

Turning to the present case, after concluding that third-party beneficiaries, including industry advancement funds, can bring suits under 29 U.S.C. § 185(a), the analysis of whether Plaintiffs have standing is fairly straightforward.

Plaintiff BIECA is an employer under the LMRA and entered into a collective bargaining agreement with the United Electrical Workers of America IUJAT, Local 363. (*See* Compl. ¶¶ 9-12.) Under the CBA, employers (including the Defendant) must make contributions to Plaintiff BIF which will then, among other things, promote the industry and stabilize and improve employer-union relations. (CBA Exhibit, Art. 26; *see also* Compl. ¶¶ 9, 12.) This explicit requirement to contribute to BIF makes it an intended third-party beneficiary to the contract. *See IBS Ketel, Ltd. v. Hanil Bank, Korea*, No. 98-CV-3507 (DC), 1999 WL 639696, at *1-2 (S.D.N.Y. Aug. 23, 1999); *see also Muhlrad v. Mitchell*, No. 96-CV-3568 (DLC), 1997 WL 182614, at *5 (S.D.N.Y. Apr. 14, 1997) (citing Restatement (Second) of Contracts § 302(1) (1981)).[11] As a third-party beneficiary, BIF may bring a claim to enforce its rights under the contract. *See Muhlrad*, 1997 WL 182614, at *5.

Therefore, the court has jurisdiction to hear BIF's LMRA claims and the motion to dismiss BIF's LMRA claims is therefore DENIED.

---

[11] The court applies New York law to make this determination because applying state law principles to determine whether BIF is a third-party beneficiary would not be "inconsistent with federal labor policy." *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015) (citing *Textile Workers*, 353 U.S. at 456-457 (1957)); *see also Mason Tenders Dist. Council Welfare Fund v. Thomsen Const. Co.*, 301 F.3d 50, 53 (2d Cir. 2002).

### 4. Application to BIECA's LMRA Claims

Defendants argue that BIECA's claims should separately be dismissed from this suit because their injury is too indirect since the allegedly delinquent payments from Patriot are owed to BIF under the contract and not BIECA. (Mot. at 12.)

BIECA's LMRA claim is based on the same allegation as BIF's—that Patriot breached the contract by not making payments to BIF pursuant to Article 26 of the CBA. (Compl. ¶¶ 62-65.) Plaintiff alleges that BIECA is harmed by these payments because BIECA "delegates all operational matters to the BIF." (Compl. ¶¶ 19, 65; *see also* Opp. at 14.) However, Article 26 of the CBA does not name BIECA as a recipient of these funds, even indirectly, or discuss any ongoing relationship between BIF and BIECA. (*See generally* CBA Exhibit, Art. 26.) Any such agreement between BIF and BIECA concerning the flow of funds is therefore at best tangential to the CBA and does not arise from the contract between BIECA and the Union. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985) ("[N]ot every dispute . . . tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301[.]") Thus, BIECA's allegations are insufficient to state a claim under the LMRA.

Plaintiff also alleges that BIECA sponsors the ERISA funds which should separately give it standing. (See Opp. at 7.) However, this argument also fails. Plaintiffs' allegation that BIECA "sponsors" and "administers" the various benefit programs with BIF, (Compl. ¶¶ 21-23, 34-35), could allow BIECA to bring suit to recover contribution to the ERISA funds as a third-party beneficiary. *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo*, 35 F.3d 29, 31, 34 (2d Cir. 1994) (allowing administrators of union ERISA funds to bring an action for delinquent contributions to the funds in violation of a collective bargaining agreement under

the LMRA). However, BIECA's LMRA claim is not focused on contributions to ERISA funds and is instead solely focused on delinquent payments to the Building Industry Fund. (Compl. ¶¶ 64, 68.) Because Plaintiff does not allege that there is a violation of the CBA due to delinquent payments to ERISA funds, Plaintiff cannot claim jurisdiction based on their status as an administrator of these funds.

In sum, the court finds that Plaintiff BIECA's LMRA claim fails. The court therefore GRANTS Defendants' motion to dismiss BIECA's LMRA claim.

### B.  Preemption of BIF's State Law Claims

Defendants move to dismiss Plaintiffs' contractual and quasi-contractual claims—for breach of the CBA, unjust enrichment, and breach of the duty of good faith and fair dealing—as preempted by the LMRA and based on the existence of an express agreement in the form of the CBA. (Mot. at 14-15.) In their response, Plaintiffs agree that if the court found that the Complaint states a claim under the LMRA then these claims should be dismissed as preempted. (Opp. at 14-15.) Because the court found that Plaintiff BIF may bring a claim under the LMRA, 29 U.S.C. § 185(a), the court dismisses BIF's state law claims on consent.

### C.  BIECA's State Law Claims

While BIF's state law claims are preempted, BIECA's are not. *See supra*. To the extent that these claims arise from Patriot's failure to pay into the BIF under the terms of the BIF, the court would have supplemental jurisdiction over these claims as relating to the same "case or controversy" as the federal claim. 28 U.S.C. § 1367. However, to the extent that BIECA's state law claims arise from the failure to pay into the BIF pursuant to the CBA, the claims also fail.

Plaintiff BIECA brings claims for breach of contract, unjust enrichment and a breach of the duty of good faith and fair

dealing. (Compl. ¶¶ 76-95.) The latter two claims—for (1) breach of the duty of good faith and fair dealing and (2) unjust enrichment—are both based on the failure to pay into the BIF, an express term of the CBA and the basis for the breach of contract claim. (*See* Compl. ¶¶ 77, 79, 82-83, 87-88.) Plaintiff's quasi-contract claims are therefore duplicative of their breach of contract claim and must be dismissed. *See Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) ("Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract."); *Hudson Neurosurgery, PLLC v. UMR, Inc.*, No. 20-CV-9642 (KMK), 2022 WL 902107, at *5 (S.D.N.Y. Mar. 28, 2022) ("[A]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."); *Goldberg v. Pace Univ.*, 535 F. Supp. 3d 180, 198 (S.D.N.Y. 2021) ("Under New York law, a plaintiff may not recover under quasi-contract claims such as unjust enrichment where an enforceable contract governs the same subject matter."); *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997) ("A claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract.").

The breach of contract claim focuses on Patriot's failure to make payments to BIF under the express terms of the CBA. (*See* Compl. ¶ 77.) As discussed, BIF was the stated recipient of these funds under Article 26 of the CBA, but Plaintiffs allege they were also harmed by Patriot's non-payment. (*See* Compl. ¶¶ 36-37, 45.) However, nowhere in the CBA does it state that the employers agree to make payments to BIECA (either directly or indirectly through payments to the BIF) or otherwise indicate that BIECA provides the services alleged in the Complaint in return for such payments. (*See generally* CBA Exhibit,

Art. 26). Thus, while BIECA may be harmed by a lack of payment into the fund, BIECA is at best an incidental beneficiary of the relevant payments under the CBA, rather than an "intended beneficiary." *See Muhlrad*, 1997 WL 182614, at *5 ("Under the Restatement, a party is a third party beneficiary if it is an 'intended' beneficiary as opposed to an 'incidental' beneficiary.") (citing Restatement (Second) of Contracts § 302(1) (1981)). As such, BIECA's breach of contract claim alleging Patriot did not meet its obligation to pay into the Building Industry Fund must be dismissed. *See Kennedy v. City of New York*, No. 94-CV-2886 (MBM), 1996 WL 711505, at *2 (S.D.N.Y. Dec. 10, 1996).

Defendants' motion to dismiss BIECA's state law contract claims is therefore GRANTED.

### D. Personal Liability Against Defendant Tek

Lastly, the court considers whether BIF may hold Defendant Michael Tek personally liable for BIF's remaining LMRA claim. (*See* Compl. ¶¶ 67-75; Opp. at 17.)

The CBA includes a provision stating that individuals are personally liable for failing to pay into the BIF. Specifically, Article 26 (F)(b) states that:

> It is expressly understood and agreed that the Officers, directors, stockholders and partners (if applicable) shall be, and remain personally liable, severally and jointly, for payment of all contributions to the BUILDING INDUSTRY FUND by their respective EMPLOYERS, as hereunder required in the same manner and with the same force and effect as if they had each executed this Agreement as individual Employers.

Defendant Michael Tek is the CEO and owner of Defendant Patriot and would therefore be covered by the plain text of this provision. (*See* Compl. ¶¶ 5, 72-75.) However, the presence of a

personal liability clause is not dispositive on issues of individual liability of a corporation's owner or officer. *See Mason Tenders,* 301 F.3d at 54. Even when such a clause exists, there must still be "clear and explicit evidence of an individual defendant's intent to add personal liability to the liability of the entity." *Bricklayers Ins. & Welfare Fund v. Topline Const., Inc.*, No. 03-CV-0487 (NGG) (MDG), 2006 WL 3337509, at *3 (E.D.N.Y. Sept. 6, 2006) (citing *Mason Tenders,* 301 F.3d at 53).

Courts considering whether a plaintiff may hold an individual defendant personally liable for claims brought under the LMRA have applied state law. *See Mason Tenders,* 301 F.3d at 54. Under New York law, individual liability is found "only in rare cases" where there is "overwhelming evidence of the signatory's intention to assume personal liability." *Id.* at 53. Factors considered in determining such intent include "the contract's length, the location of the liability provision relative to the signature line, the presence of the name of the signatory in the contract itself, the nature of the negotiations leading to the contract, and the signatory's role in the corporation." *Id.* "[T]he New York Court of Appeals has observed that "where individual responsibility is demanded the nearly universal practice is that the officer signs twice—once as an officer and again as an individual." *Id.* at 54 (citing *Salzman Sign Co. v. Beck,* 10 N.Y.2d 63, 67 (1961)). A provision assigning personal liability is also generally prominent and directly above the signature line. *See Cement & Concrete Workers Dist. Council Welfare Fund,* , 35 F.3d at 35; *Sullivan v. Marble Unique Corp.,* No. 10-CV-3582 (NGG) (LB), 2011 WL 5401987, at *9 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted,* No. 10-CV-3582 (NGG) (LB), 2011 WL 5402898 (E.D.N.Y. Nov. 4, 2011). Thus, while two signature lines are not required, the absence of a signature line relating to individual liability on the signing officer weighs heavily against the party asserting personal liability. *Id.*

Here, Plaintiffs do not allege that Defendant Tek signed a separate signature line acknowledging his personal liability. (*See generally* Opp. at 16-17.) This strongly weighs against finding that Defendant Tek clearly and explicitly made himself personally liable for Defendant Patriot's obligations. *Mason Tenders*, 301 F.3d at 54. Plaintiffs do allege, however, that Tek "personally negotiated" the clause to hold individual officers personally liable under Article 26(F)(6). (Compl. ¶¶ 72-75.)

Despite the heavy burden to demonstrate personal liability in the absence of a separate signature line, dismissal of the personal liability claim is premature at this time. Plaintiffs allege that Mr. Tek "personally negotiated" this provision, (Compl. ¶¶ 72-75), making this case unlike others where plaintiffs did not adequately allege or demonstrate personal liability, supporting dismissal. *See, e.g., Mason Tenders*, 301 F.3d at 53 ("It is undisputed that there were no negotiations with respect to any part of the agreement."); *Bricklayers Ins. & Welfare*, 2006 WL 3337509, at *3 ("Other than reliance on this contract clause, plaintiffs provide no evidence of [the individual defendant's] intent to assume personal liability. For example, plaintiffs make no allegations regarding the negotiations that led to execution of the CBA."); *Sullivan*, 2011 WL 5401987, at *9 ("Plaintiffs' failure to allege or produce any evidence of the nature of the negotiations related to the personal liability provision weighs heavily against finding intent to assume personal liability.").

Defendants dispute this allegation, providing an affidavit from Mr. Tek where he states that although he was present for negotiating sessions for the CBA, he "was not present for any discussion of a personal guarantee of payments to BIF." (Tek Aff. ¶¶ 15-16.) Plaintiff responds with an affidavit from Pat Bellantoni, Director of the BIF and President of BIECA, stating that Tek was "directly and personally involved in the negotiation of

the CBA." (Bellantoni Aff. ¶ 25.)[12] Unlike the CBA itself, however, the affidavits were not incorporated into the Complaint by reference and the statements therein are disputed. (*See generally* Opp. at 16-17; Reply at 8-10.) The affidavits would therefore be more properly considered on summary judgment. *See Kamholtz v. Yates Cnty.*, 350 F. App'x 589, 592 (2d Cir. 2009) (summary order); *see also ATSI Comms., Inc.*, 493 F.3d at 98 (noting that a court accepts all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor).[13]

In sum, although Plaintiffs face a high hurdle to demonstrate that this is one of those "rare cases in which there is the requisite overwhelming evidence of the signatory's intention to assume personal liability," *Sullivan*, 2011 WL 5401987, at *9, the court finds that it is premature to dismiss the claim at this early stage. Defendants' motion to dismiss Plaintiff BIF's LMRA claim against Defendant Tek is therefore DENIED.

---

[12] Notably, while the Complaint notes that Mr. Tek specifically negotiated the personal liability clause, this is absent in the Bellantoni Affidavit. (*Compare* Compl. ¶¶ 72-75; Bellantoni Aff. ¶ 25.)

[13] The court notes that because Section 130(a) of the LMRA, 29 U.S.C. § 185(a), both confers jurisdiction and forms the basis of Plaintiffs' claims, there is some overlap in the court's consideration of Defendants' motions to dismiss due to lack of jurisdiction and failure to state a claim. *See Textile Workers*, 353 U.S. at 451 (noting that the statute is both jurisdictional and provides the source of substantive law). This is relevant as to whether it would be proper to consider the affidavits at this stage. *See Carter v. Health-Port Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (noting that Defendants may make a fact-based challenge to a plaintiff's assertion of subject matter jurisdiction). Here, the question of the intent to accept personal liability is more properly considered as focusing on Plaintiffs' ability to state a claim under 29 U.S.C. § 185(a) rather than the court's jurisdiction for this dispute. The court therefore finds that the personal liability question is more properly considered pursuant to Defendants' Rule 12(b)(6) motion.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Defendants' motion to dismiss Plaintiffs' claims. Specifically, the court GRANTS Defendants' motion to dismiss Plaintiff BIECA's claims in their entirety and DENIES Defendant's motion to dismiss Plaintiff BIF's LMRA claim. The court further DISMISSES Plaintiff BIF's state contract law claims on consent.


SO ORDERED.


Dated:     Brooklyn, New York
           January 2, 2024

                                          s/Nicholas G. Garaufis
                                          NICHOLAS G. GARAUFIS
                                          United States District Judge